UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JACQUELINE JACKSON, DESHAWN STRONG,
JACQUELINE S. JACKSON INDIVIDUALLY
AND AS THE NEXT FRIEND OF
JASHAWNA STRONG, AN INFANT,

    Plaintiff,

CITY OF NEW YORK, DARRELL O'NEILL
# 2206, JOHN & JANE DOES ## 1-10,

    Defendants.

**COMPLAINT**

JURY TRIAL DEMANDED

15-cv-01713-ALC

-----------------------------------------------------------X

## NATURE OF ACTION

1. This action is brought by plaintiffs to recover damages for the unconstitutional use of force, assault and false arrest, illegal detention and malicious prosecution under the laws of the United States Constitution.

## THE PARTIES

2. Plaintiffs are residents of New York, New York and Bronx, New York.

3. The City of New York is a municipal corporation whose residence is in all five counties of New York City.

4. Defendant O'Neill is an employee of the New York City Police Department, upon information and belief at Manhattan North Narcotic Boro. His residence is unknown.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this district pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, among them 42

1

U.S.C. § 1983. The common-law claims against the City of New York are brought under the court's ancillary jurisdiction insofar as they arise out of the same common nucleus of operative fact.

7. Venue is properly placed in this district pursuant to 28 U.S.C. § 1391(c), inter alia, in that the City of New York is deemed to reside in this jurisdiction.

## FACTUAL ALLEGATIONS UNDERLYING PLAINTIFF'S CLAIMS
### The 2012 Arrest

8. On or about the 24th day of May 2012, Deshawn Strong, a black man whose daughter lives in Harlem and who himself lives in the Bronx, was obeying all laws of the City and State of New York and Federal Government.

9. Suddenly, he was apprehended by the police, charged with various crimes having to do with assault under NY County Docket Number 2012NY040372.

10. After being held at central booking for 24 hours, he was arraigned held on bail that he could not post for at least five days, then released because the prosecution could not obtain an indictment.

11. The case proceeded for several months, until, upon the motion of the District Attorney, the case was dismissed.

12. The record of the case has been sent to storage, despite attempts to find it before the statute of limitations expires. Upon information and belief, the DA dismissed the case for lack of probable cause. Mr. Strong was a black man at the

2

wrong time, nabbed without probable cause and sues for the redress and embarrassment of for false arrest and malicious prosecution.

### The April 2014 Arrest

13.    On April 19, 2014, on 124th and Amsterdam Avenue, Mr. Strong was observing all laws. Two officers approached and arrested him, stating that they had seen him trespassing a building at 1295 Amsterdam Avenue.

14.    The officers had no probable cause to find that DeShawn was trespassing. He had permission to visit his cousin, Devon Corporal who lives on the first floor, upon information and belief, Apartment 1C.

15.    Plaintiff was taken to the local housing precinct and held for approximately ten hours.

16.    At his arraignment on April 20, 2014, some ten hours later, the case was dismissed or plaintiff agreed to an adjournment in contemplation of dismissal.

17.    He sues for false arrest and, depending on the disposition, malicious prosecution.

### The May 2014 Arrest and Unreasonable, Probably Unlawful Search

18.    Mr. Strong is a black man in the ghetto with no criminal record. Nevertheless, the police repeatedly target him. On or about May 29, 2014, at around 6:00 AM, he and his seven-year-old daughter Jashawna were present at 430 West 125th Street Apartment 12B.

19. Deshawn does not live there - he lives in the Bronx, but is friendly with his baby's mother, Jacqueline S. Jackson, and likes to spend time with both of them, as well as the elder Mrs. Jacqueline Jackson, Jashawna's grandmother.

20. Deshawn heard several bangs on the door: not a knock, but a battering ram. The ram broke open the door, and about eight police officers (six males and two females, upon information and belief) entered with SWAT-type equipment with their guns drawn.

21. Deshawn ran to Jashawna's bedroom to be with her, and one or more officers shoved him on the bed.

22. Jashawna, 6 at the time, was screaming, "no that's my daddy!" Two officers grabbed Jashawna and put handcuffs on Deshawn.

23. They then took him to the living room and threw him on the couch, face first, separated from his daughter.

24. Oddly, one of the officers ordered Jashawna to take a bath.

25. Then the officers used a battering ram to open Jacqueline's room, which she keeps locked when she is away because of the presence of legal prescription medications. She is approximately 57, has no criminal record, and suffers from several maladies.

26. Whatever was found was, upon information and belief, the elder Jacqueline's medication.

27.	The officers did have a search warrant for the apartment, naming an individual that vaguely described Deshawn, who doesn't live there. The warrant was so overwhelming, however, suggesting that the apartment was being used as by Mr. Strong as a crack distribution location, and would contain cash, cocaine and throw away cell devices.

28.	Deshawn was held in a van for 1.5 hours, then taken to 26th precinct where he was held for 7 hours. He was then taken to central booking and released him at 12 PM for a total time of 18 hours. He was charged with various offenses, including two felonies and two misdemeanors, all of which were false.

29.	Deshawn was not held on bail because, despite three arrests, it would have been his first offense if found guilty. So he was "allowed" to attend an alternative to bail program. He nevertheless lost his job as a security guard, and had to report repeatedly to the alternative to bail program, that restricted his liberty.

30.	His attorney demanded that the judge examine the affidavit provided by defendant O'Neill to the warranting judge to convert the warrant. The prosecution refused to provide it, however, and the case was dismissed and sealed.

31.	The effects on the rest of the family have been devastating. For no reason, one of the Officers called Child Welfare, which conducted an investigation and required everyone in the home to come to its offices and take drug tests.

32.     Despite that the tests came back negative, the Administration for Children's Services found that the report from Child Welfare was "indicated," meaning that there was some - perhaps less than a preponderance of - evidence that Jashawna had been maltreated. In fact, she was not, and the "indicated" report has consequences for the younger Jacqueline, including inability to adopt, take custody, be a foster parent, or even work in a child-care setting. For a woman with limited education, this takes away many opportunities.

33.     The younger Jacqueline was not even present at the time of the home invasion - which was unreasonable, damages property, and made the home look like an episode of "Hoarders."

34.     One or more of the officers, while taking Deshawn away, said that they had found something not in the house but under the air conditioner outside of the house between the B and the C line.

35.     In fact, this would have been physically impossible, because to reach said air conditioner, one could only do it from outside.

36.     Even though nothing was found and the charges were dismissed against Deshawn, the family is in danger of losing its apartment. The elder Ms. Jackson is now on sleep medications, because she is so worried about this.

37.     Jashawna was traumatized and every time the subject comes up - even when it is suggested she see a therapist - she starts shaking and acting. It was a traumatic

6

experience based on unreliable information that O'Neill converted into the crime of the century, leaving out the holes in the confidential informant's information, as well as his or her complete unreliability. The family sues for redress.

FIRST, SECOND AND THIRD CAUSES OF ACTION
FALSE ARREST & IMPRISONMENT UNDER 42 U.S.C. § 1983
Arrests from 2012, and Two Arrests in 2014
Deshawn Strong

38. Plaintiff Strong repeats and realleges the allegations set forth in all preceding paragraphs.

39. Plaintiff was arrested without probable cause on three occasions. The conduct of defendants violated plaintiff's right to be free of unreasonable and unlawful seizure, secured by the Fourth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

40. By virtue of the foregoing, Plaintiff has been damaged.

FOURTH CAUSE OF ACTION
FAILURE TO INSTRUCT, SUPERVISE, AND CONTROL DIRECTED
COGNIZABLE UNDER MONNELL AND 42 U.S.C. § 1983
BY ALL PLAINTIFFS AND AGAINST THE CITY OF NEW YORK

41. Plaintiffs repeat and reallege the allegations set forth in all preceding paragraphs as if fully set forth herein.

42. At all times relevant to this complaint, defendants as officers of the City of New York Police Department, was acting under the direction and control of the City of New York, which acted through its agents and employees who were

responsible for making policy of the police department, its officers and operations, and the individually named defendants were acting pursuant to either official policy or the practice, custom and usage of the City of New York and its Police Department.

43.     Acting under color of law, by and through the policy makers of the City of New York and pursuant to official policy or custom and practice, the City of New York intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the City of New York, failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendants in the performance of their duties to refrain from

    a.     withholding and misrepresenting information to magistrates in order to obtain search warrants;
    b.     arresting citizens without cause, especially persons of color;
    c.     misusing the criminal trespass statute for arrests just to make quotas;
    d.     conducting unreasonable searches notwithstanding the presence of a search warrant.

44.     The City of New York had knowledge of or, had it diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts, were going to be committed. Defendant City of New York had power to prevent the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of the inhabitants of the City of New York failed or refused to do so.

45. As a result of the foregoing, plaintiff was deprived of her right to be secure in his person, against unreasonable seizure of his person and against the use of excessive force in violation of the Eighth, Fourth and Fourteenth Amendments of the Constitution and 42 U.S.C. § 1983, and has been damaged.

FIFTH CAUSE OF ACTION
FALSE ARREST & IMPRISONMENT
May 2014 Arrest
Deshawn Strong

46. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs.

47. Plaintiff was held and imprisoned against her will; she was aware of the confinement and it was not otherwise privileged because plaintiff was not a danger to herself or others and there was no probable cause that she had committed a crime.

48. By virtue of the foregoing, Plaintiff has been damaged.

SIXTH CAUSE OF ACTION
MLAICIOUS PROSECUTION
May 2014 Arrest leading to January 2015 dismissal
Deshawn Strong

49. Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs.

50. Plaintiff was prosecuted without probable cause.

51. By virtue of the foregoing, Plaintiff has been damaged.

EIGHTH CAUSE OF ACTION
UNREASONABLE SEARCH AND SEIZURE
42 U.S.C. § 1983

52. Plaintiffs repeats and realleges the allegations set forth in all preceding paragraphs as if fully set forth herein.

53. Defendants misrepresented information from a confidential informant, and/or withheld information from the judge acting on the information, in order to obtain a search warrant.

54. By virtue of the foregoing, all Plaintiffs have been damaged. The Jacksons are suffering from emotional distress, were reported to Child Welfare, and are in danger of losing their home. The infant has become emotionally distressed. Deshawn was the target of the warrant even though he did not reside at the premises that were searched, and it has affected his relationship with his daughter and her family.

55. By virtue of the foregoing, Plaintiff has been damaged.

**WHEREFORE,** Plaintiffs demand as follows:

A. Compensatory damages;

B. Punitive damages to be determined by the trier of fact;

C. Cost of suit and attorneys fees pursuant to 42 U.S.C. § 1988;

D. Such other relief as the Court may deem just and proper.

Dated:   New York, New York
         March 6, 2015

/s/
GREGORY ANTOLLINO (GA 5950)
Attorney for Plaintiff
275 Seventh Avenue #705
New York, NY 10001
(212) 334-7397